UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-CR-154-JED |
| v. ) | |
| ) | |
| THOMAS MONGRAIN EAVES, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is the defendant's Motion to Quash Arrest and Suppress Statements ("Motion") (Doc. 26), which the government has opposed (Doc. 34). Defendant argues that he was arrested without probable cause, and as a result, the statements he made to FBI agents on three different occasions subsequent to his arrest and while in custody should be suppressed.

### BACKGROUND

On August 25, 2015 at 2:20 a.m., defendant arrived at the Pawhuska Hospital emergency room requesting medical treatment for his girlfriend, Starr Pennington ("Pennington"). (Doc. 34 at 2). Medical staff immediately began treatment and despite their best efforts to resuscitate Pennington, she was pronounced dead less then thirty minutes after her arrival. (*Id*.). The doctor who treated Pennington believed her to have been deceased for at least four hours before defendant arrived at the hospital with her in his back seat. (*Id*.). Pennington had bruising on most of her body and the doctor noted suspicious bruising on both ears as well as a swollen left hand. (*Id*.). Defendant provided the hospital staff with little to no information regarding the events that led up to. Pennington's death. (*Id*. at 3; s*ee also* Doc. 48 at 2).

At 7:00 a.m., the Osage Nation Police Department ("ONPD") took defendant into custody as a "material witness" pursuant to 18 U.S.C. § 3144. (Doc. 42 at 3). ONPD held defendant for approximately six hours in a station holding cell before FBI agents requested an interview with him. After Mirandizing the defendant, FBI agents Cavitt and Zoller questioned defendant for about an hour. He was then escorted to a tribal judge at Osage Nation Tribal Court for a bond hearing. (Doc. 39 at 3). ONPD then took the defendant to Osage County Jail pending the post of his bond. *Id*. At 4:10 p.m. on August 25, 2015 the FBI executed a valid search warrant on defendant's home which revealed a large pool of blood on the floor of the residence. (Doc. 48 at 3). Defendant was subsequently interviewed twice, once the following day, August 26, 2015 and once on September 1, 2015. (Doc. 34 at 4). On September 16, 2015 the Government filed a federal criminal complaint against the defendant for second degree murder. *See* Doc. 1.

The Court held a motions hearing on November 5, 2015. The Court held defendant's Motion in abeyance pending supplementation of the record. The parties filed supplements. (Docs. 48, 52). The Court held a pretrial conference and motions hearing on April 8, 2016. At the conference, the parties represented that they were in agreement that the statements made by defendant on August 26, 2015, and September 1, 2015 would not be introduced at trial unless defendant opened the door. The Court found that defendant's Motion as it related to those two statements to be moot. Accordingly, this Order only addresses the motion to quash defendant's arrest and the suppression of defendant's August 25, 2015 statements.

**ANALYSIS**

**I.       Motion to Quash Arrest**

The defendant challenges his arrest, arguing that the police did not have probable cause to arrest him in connection with Pennington's death. (Doc. 26 at 4-6). In response, the government does not attempt to meet its burden to prove that the defendant's arrest was lawful. Instead, it asserts that the defendant was not arrested at all, but merely "detained" and "held as a material witness." (Doc. 34 at 4).

The federal material-witness statute authorizes judges to "order the arrest of [a] person" where "it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena." 18 U.S.C. § 3144. The government bears the burden to prove that the defendant was arrested lawfully. *United States v. De La Cruz*, 703 F.3d 1193, 1196 (10th Cir. 2013) (citation omitted).

Here, the government did not file an affidavit regarding the materiality of the defendant's testimony or show that a subpoena would not suffice to secure his presence at trial. Under Oklahoma law, a warrant is not necessary to detain a material witness, but probable cause is.[1] Officers may not avoid the Fourth Amendment's probable cause requirement by calling their detainees "material witnesses" rather than "suspects." As the government has not borne its

---

[1] The Oklahoma statute provides, in relevant part, as follows:

> If a law enforcement officer has probable cause to believe that a person is a necessary and material witness to a felony and that there is probable cause to believe that the person would be unwilling to accept service of a subpoena or may otherwise refuse to appear in any criminal proceeding, the officer may detain the person as a material witness with or without an arrest warrant.

Okla. Stat. Ann. tit. 22, § 720.

3

burden to show that probable cause existed to detain the defendant, the Court finds the defendant's arrest unlawful.

## II.     Motion to Suppress the August 25, 2015 Statements

The defendant argues that, pursuant to *Brown v. Illinois*, 422 U.S. 590, 605 (1975), the statements he made while in custody as a purported material witness should be excluded as the fruit of the illegal arrest.  The government counters that any taint of illegality had been purged by the time the defendant made the statements in question.  To show this however, the government must prove "a sufficient attenuation or break in the causal connection between the illegal detention" and the confession.  *United States v. Fox*, 600 F.3d 1253, 1259 (10th Cir. 2010) (citing *United States v. Gregory*, 79 F.3d 973, 979 (10th Cir. 1996)).  This is a heavy burden.  *Id.*

Miranda warnings are "an important factor . . . in determining whether the confession is obtained by exploitation of an illegal arrest," but the warnings alone are not sufficient to break "the causal connection between the illegality and the confession."  *Brown*, 422 U.S. at 603. Under *Brown*, courts give particular attention to (1) the temporal proximity of the arrest and the confession, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct.  *Id.* at 603-04 (citations omitted).  The prosecution bears the burden of showing admissibility.  *Id.* at 604.

Invoking these factors, the government argues that (1) eleven hours passed between the defendant's detention and his statement; (2) "intervening events occurred . . . namely, further investigation in the case, the drafting of search warrants, the searching of the Defendant's vehicle, the initial examination of the body, and interviews of hospital personnel"; and (3) the FBI's conduct was not flagrant as agents requested an interview after the defendant had slept and

4

eaten, and the defendant voluntarily agreed to the interview and was Mirandized.  (Doc. 34 at 6-7).

A "close temporal proximity" between the unlawful conduct and subsequent confession weighs against a finding of attenuation.  *See Fox*, 600 F.3d at 1260.  While the government suggests that the eleven hours between defendant's detention and his statement weighs against suppression, the Court disagrees.  The Supreme Court has recognized that "a difference of a few hours is not significant" where the defendant "was in police custody, unrepresented by counsel, and he was questioned on several occasions."  *Taylor v. Alabama*, 457 U.S. 687, 691, 102 S. Ct. 2664, 2667, 73 L. Ed. 2d 314 (1982); *see also United States v. Watson*, 703 F.3d 684, 697 (4th Cir. 2013) (finding temporal proximity to weigh strongly in favor of suppression because "[the defendant] was not freed from the officers' custody at any point between his initial seizure and the time he made his incriminating statement"). There is no question that defendant remained in police custody and was not represented by counsel in the eleven hours between his initial detention and resulting statement.

The government's purported "intervening events" are not relevant to the analysis under *Brown*.  The government describes events that, while related to the case, have not been shown to have affected the defendant in any way, let alone in a way that would ensure that his illegal arrest did not taint the statements he made.  "Some examples of intervening circumstances include carefully explaining a consent form and advising an individual of the right to withhold consent, release from custody, an appearance before a magistrate, or consultation with an attorney, to name a few."  *Fox*, 600 F.3d at 1260-61 (quotations, citations, and alterations omitted).  In these examples, the intervening circumstances affected the defendant in some way, and thereby the voluntariness of his confession.  The *Brown* analysis focuses on the causal connection between

5

an illegal arrest and a subsequent confession or inculpating statement, not on the progress of the investigation outside of the defendant's knowledge.[2] By contrast, in this case, the government "fails to explain how [the events it identifies] . . . could possibly have contributed to [the defendant's] ability to consider carefully and objectively his options and to exercise his free will." *Taylor*, 457 U.S. at 691. Put succinctly, the government has offered circumstances only, not circumstances that destroy the causal connection between the arrest and the interrogation.

The government's argument with respect to the flagrancy of the FBI's conduct once the defendant was detained similarly misses the point. "[T]he inquiry under this factor is not whether the officers' conduct—apart from the illegal seizure—coerced" the defendant's confession. *Fox*, 600 F.3d at 1261 (quotations and citations omitted). "Rather, purposeful and flagrant misconduct is generally found where: (1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed in the hope that something might turn up." *Id.* (quotations and citations omitted). Probable cause is among the most elementary of the restraints the Constitution places on an officer's conduct. The misconduct in this case was obvious, and it includes the fact that the defendant was detained "in the hope that something might turn up," *id.*, as officers, by the

---

[2] *United States v. Oliver*, 27 F. App'x 927, 929 (10th Cir. 2001) (unpublished), at a glance may appear to suggest otherwise: "significant intervening events occurred between the period of his unlawful detention and his post-*Miranda* statement—namely, the discovery of the firearm and the establishment of probable cause. In *Oliver*, however, the defendant's arrest was legal and officers discovered the firearm in his presence. *Id.* Compare with *United States v. Wade*, No. 15-1319, 2015 WL 5817723, at *4 (3d Cir. Oct. 6, 2015) (officers' discovery of drugs and gun was significant intervening circumstance because officers alerted defendant to the discovery). Here, the government has made no suggestion that defendant was aware of any developments in the investigation before making his statements.

government's own account, conducted "further investigation" and "search[ed] . . . the Defendant's vehicle." (Doc. 34 at 6).

The government has not carried its burden to demonstrate sufficient attenuation between the illegal detention of defendant and his August 25, 2015 statements. Accordingly, the Court finds that the statements should be suppressed.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Quash Arrest and Suppress Statements is **granted** in part as to the August 25, 2015 statements and **moot** as to the August 26, 2015 and September 1, 2015 statements.

**IT IS SO ORDERED** this 8th day of April, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE