UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-CR-154-JED |
| v. ) | |
| ) | |
| THOMAS MONGRAIN EAVES, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is the defendant's Motion in Limine to Exclude Expert Testimony (Doc. 61). By this Motion,[1] defendant seeks to exclude the testimony of Missy Iski ("Ms. Iski"), whom the government has represented it intends to call as an expert witness regarding spousal abuse. The government did not file a Response, but provided the Court with Ms. Iski's curriculum vitae at the April 8, 2016 pretrial conference.

The government informed defense counsel that Ms. Iski is expected to testify regarding the following: (1) the effects of domestic abuse on the beliefs, behavior, and perception of Pennington; (2) the use of the power and control wheel to describe the complex dynamics of domestic violence; (3) the use of the power and control wheel to demonstrate the various strategies of coercive control that an abusive partner would use against an intimate partner; (4) tactics to impose punishment and encourage fear; and (5) the results of an assessment tool determining the likelihood that defendant committed the alleged crime. (Doc. 61 at 1-2). Defendant does not challenge Ms. Iski's qualifications. Rather, defendant moves to exclude Ms. Iski's proffered testimony on the following grounds: (1) Ms. Iski's testimony regarding

---

[1] The Court notes that this Motion was filed almost one month after the motions filing deadline.

Pennington's beliefs, behavior, and perception has no relation to a "fact of consequence" as required by Fed. R. Evid. 401; (2) Ms. Iski's methodology as to the danger assessment fails under Fed. R. Evid. 703 because she did not personally evaluate the victim and her conclusions are based on Pennington's statements to others about a purported pattern of abuse; and (3) Ms. Iski's testimony should be stricken under Fed. R. Evid. 702 because it is neither helpful to the trier of fact nor is it reliable in these circumstances.  The Court addresses each of these contentions in turn.

### A. Expert Testimony Regarding Pennington's Beliefs, Behavior, and Perception under Fed. R. Evid. 401

Defendant contends that the effects of domestic abuse on the "beliefs, behavior and perception" of Pennington, one of the issues on which Ms. Iski seeks to provide testimony, are not material to the determination of whether defendant committed second degree murder or voluntary manslaughter under Fed. R. Evid. 402 and should therefore be excluded. (Doc. 61 at 3).  Defendant cites no case law in support of this argument.

"[T]he concept of materiality is now embodied within the broader notion of relevance as defined in [401] . . . [and] refers to whether or not that evidence relates to a fact of consequence to the determination of the action." *Telum, Inc. v. E.F. Hutton Credit Corp*. 859 F.2d 835, 838 (10th Cir. 1988).  A fact of consequence describes the "kind of fact to which proof may properly be directed . . . . The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." Fed. R. Evid. 401 (advisory committee notes).  "A trial court has broad discretion to determine whether evidence is relevant, and its decision will not be reversed on appeal absent a showing of clear abuse of that discretion." *United States v. Bedonie*, 913 F.2d 782, 801 (10th Cir. 1990) (quoting *Hill v. Bache Halsey Shields, Inc.*, 790 F.2d 817, 825 (10th Cir. 1986)).

Despite defendant's failure to cite any authority in support of his argument, the Court agrees that Pennington's beliefs, behavior and perception are irrelevant to establish whether *defendant* committed second degree murder or voluntary manslaughter. Thus, the Court **grants** defendant's request to exclude this portion of Ms. Iski's testimony.

### B. Expert Testimony Based on Danger Assessment under Fed. R. Evid. 703

As stated above, the government expects Ms. Iski to testify regarding the likelihood that defendant committed the alleged crime against Pennington based on a tool called the danger assessment.[2] Defendant contends that Ms. Iski, who has not personally evaluated the victim, will retroactively assess the victim throughout the course of the trial by listening to the trial testimony, use the testimony to apply the criteria set forth in the danger assessment, and then provide testimony on the results of the danger assessment. (Doc. 61 at 4-5). Defendant argues that Fed. R. Evid. 703 does not allow Ms. Iski to conduct a posthumous danger assessment based on the statements of third parties. (*Id.* at 4). The Court notes that defendant cites no cases in support of this argument.

Rule 703 of the Federal Rules of Evidence states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion about the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may

---

[2] The danger assessment was developed in 1985 by a Dr. Jacquelyn Campbell and in its original form, it was to be used as a predictor of homicide. Margaret E. Johnson, *Balancing Liberty, Dignity, and Safety: The Impact of Domestic Violence Lethality Screening*, 32 CARDOZO L. REV. 519, 523 (2010). The danger assessment "is a twenty question instrument 'which uses a weighted scoring system to count yes / no responses of risk factors associated with intimate partner homicide.'" *Id.* at 528-29. The questions "are based on various risk factors clinicians, researchers, and women subjected to violence themselves have determined to be indicative of future risk of violence." *Id.* at 522. Importantly, the questions are directed to the victim, are deeply personal, and should reflect the particular circumstances of a given victim. (*See* Ex. 1).

>disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

Defendant asserts that "it is unlikely that a psychologist or psychiatrist would rely on information provided by third parties . . . in treating or diagnosing a patient." (Doc. 61 at 5). While the Court acknowledges that the danger assessment is a valuable tool, research demonstrates that a properly conducted danger assessment relies on responses given by the victim, not by other witnesses.[3] For example, a model danger assessment, attached as Exhibit 1, directs the *victim* to answer questions specific to the victim's relationship with the abuser, as well as the victim's perception of the abuser. The government has provided the Court with no argument to suggest that testimony from other witnesses as to Pennington's own perceptions of the defendant or her relationship with him is the method used by other experts conducting danger assessments. That is logical, as the witnesses would be unlikely to answer the questions in a manner that would have been consistent with the victim's answers. The Court will not allow the government to circumvent the principles underlying Fed. R. Evid. 703 by allowing Ms. Iski to conduct the danger assessment in the manner in which the government seeks.[4]

Additionally, the Court is particularly troubled by the fact that, though not raised by defendant, the government's representation of Ms. Iski's testimony comes dangerously close to

---

[3] "[T]he research shows that the danger assessment tools are more reliable than clinicians' own assessments of the women's risk . . . [a danger assessment] is 'consistently more valid [at predicting future risk of violence] than relying on assessors' experience, memory, familiarity with relevant research, and intuition.'" Johnson, *Balancing Liberty, Dignity, and Safety*, 32 CARDOZO L. REV. at 531.

[4] To the extent that the government argues it will rely on statements made by Pennington to medical providers, the Court notes that none of the statements, which were made as part of medical diagnosis and treatment, pertain in any way to the nature of the questions used in the danger assessment. (*See* Ex. 1).

constituting an opinion on an ultimate issue, which is not allowed in criminal cases. Fed. R. Evid. 704(b) prohibits an expert witness in a criminal case from providing an opinion on "whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense," as such "matters are for the trier of fact alone." If Ms. Iski were to testify regarding defendant's likelihood of committing the alleged homicide, there is a risk that her testimony could constitute an opinion as to whether defendant had the mental state to commit either second degree murder or voluntary manslaughter and thus run afoul of Fed. R. Evid. 704(b).[5] *United States v. Reyez*, 183 F. App'x 755, 759 (10th Cir. 2006) (unpublished) ("'[A] prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea*.'" (quoting *United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997))).

The Court further finds that the introduction of Ms. Iski's testimony would unfairly prejudice defendant under Fed. R. Evid. 403. Rule 403 requires that the Court weigh the probative value of evidence against its potential prejudicial effect. Fed. R. Evid. 403. "Unfair prejudice within its context means an undue tendency to suggest decision on an improper basis . . . ." Fed. R. Evid. 403 (advisory committee notes). Based on the foregoing discussion regarding the questionable methodology Ms. Iski seeks to employ in conducting the danger assessment, the Court finds that allowing Ms. Iski to perform the danger assessment would have very little

---

[5] The intent elements for both charges are as follows. Second degree murder requires malice aforethought, which "is satisfied by: (1) intent-to-kill without the added ingredients of premeditation and deliberation; (2) intent to do serious bodily injury; (3) a depraved-heart; or (4) commission of a felony when the crime does not fall under the first-degree murder paragraph of §1111(a)." *United States v. Pearson*, 203 F.3d 1243, 1271 (10th Cir. 2000). "Voluntary manslaughter requires proof beyond a reasonable doubt that the defendant acted, while in the heat of passion or upon a sudden quarrel, with a mental state that would otherwise constitute second degree murder—either a general intent to kill, intent to do serious bodily injury, or with depraved heart recklessness." *United States v. Serawop*, 410 F.3d 656, 666 (10th Cir. 2005)

5

probative value.  On the other hand, the risk of prejudice, specifically that the jury may fail to see the limitations of Ms. Iski's methodology and take any proffered calculations as conclusive facts, is great.

The Court therefore **grants** defendant's request.  Ms. Iski will not be permitted to make a posthumous danger assessment of the deceased victim or to testify regarding the results of any such assessment.

### C. Expert Testimony under Rule 702

Defendant further argues that Ms. Iski's testimony should be excluded because it does not assist the trier of fact nor is it sufficiently reliable as required by Fed. R. Evid. 702 and *Daubert*.

Pursuant to Federal Rule of Evidence 702, "[e]xpert testimony is admissible only if it is potentially helpful to the jury and '(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the [expert] has applied the principles and methods reliably to the facts of the case.'" *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) (quoting Fed. R. Evid. 702).  "[A] trial court's focus generally should not be the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." *Bitler v. A.O. Smith Corp*, 400 F.3d 1227, 1233 (10th Cir. 2004) (citing *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579, 592 (1993).  Neither *Daubert* nor the Federal Rules of Evidence require a court to "admit opinion evidence [which contains] too great an analytical gap." *Norris v. Baxter Healthcare Corp*., 397 F.3d 878, 886 (10th Cir. 2005).

As an initial matter, the Court notes that the government did not file a Response.[6]  Moreover, a *Daubert* hearing was not sought. While the Court believes that testimony regarding domestic abuse may be helpful to the jury in this case, it is unable to properly assess the

---

[6] At the April 8, 2016 pretrial conference, the Court directed the government to provide a response if it felt it would be helpful to the Court.  The government did not respond.

reliability of Ms. Iski's proffered testimony based on the limited record before it.  The Court has no information about Ms. Iski other than her curriculum vitae and no information about her proffered testimony other than defendant's representations.  Without more, the Court cannot allow Ms. Iski to testify under Rule 702 or *Daubert*.

**IT IS ORDERED** that defendant's Motion in Limine to Exclude Expert Testimony (Doc. 61) is **granted**.

**SO ORDERED** this 11th day of April, 2016.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE